**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ROBERT WITCZAK,

    Petitioner,

                                CIVIL CASE NO. 08-10723

v.                            HONORABLE STEPHEN J. MURPHY, III

BLAINE C. LAFLER,

    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Robert Witczak, presently confined at the Bellamy Creek Correctional Facility in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] In his *pro se* application, the petitioner challenges his conviction and sentence for conspiracy to commit armed robbery, M.C.L. §750.157a(a); M.C.L. §750.529. For the reasons stated below, the petition for writ of habeas corpus is denied.

### BACKGROUND

The petitioner was originally charged with two counts of attempted murder, two counts of assault with intent to commit murder, one count of conspiracy to commit armed

---

[1] When the petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the St. Louis Correctional Facility. Since filing his application for habeas relief, the petitioner has been transferred to the Bellamy Creek Correctional Facility. The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006) (citing *Hogan v. Hanks*, 97 F. 3d 189, 190 (7th Cir. 1996); *see also* Rule 2(a), 28 foll. U.S.C. § 2254. Normally, the Court would order that the caption of the case be amended to reflect that the proper respondent in this case is Kenneth T. McKee, the warden of Bellamy Creek Correctional Facility, the current location of the petitioner. However, because the Court is denying the petition, it will not do so in this case. *See Logan v. Booker*, No. 2007 WL 2225887, at * 1, n.1 (E.D. Mich. Aug. 1, 2007).

1

robbery, one count of felon in possession of a weapon, one count of felony-firearm, and being a third felony habitual offender.

On May 3, 2006, the petitioner pleaded guilty to the conspiracy to commit armed robbery count as part of a plea and sentencing agreement with the Clare County Prosecutor. In exchange for his plea, the prosecutor agreed to dismiss the remaining criminal charges and the habitual offender charge against the petitioner. The prosecutor further agreed to recommend a sentencing cap on the petitioner's minimum sentence as no greater than fifteen years in prison. The petitioner's defense counsel on the record acknowledged that under the terms of the agreement, the petitioner's minimum sentence would be no greater than fifteen years. The petitioner indicated on the record that he understood the terms of the plea agreement. The petitioner further indicated that no one had promised him anything other than what was placed on the record. Plea Tr., pp. 7-8. Prior to accepting the petitioner's guilty plea, the court advised the petitioner that the maximum penalty for the conspiracy to commit armed robbery charge was life in prison and that the mimimum sentence was discretionary with the court. The court further advised the petitioner of the constitutional rights that he would relinquish by pleading guilty. *Id.* at pp. 4-7. In making out his factual basis for the plea, the petitioner informed the court that he and his co-defendant planned to break into a pharmacy in the middle of the night with two loaded shotguns and to use these shotguns if persons were present in order to obtain drugs. The petitioner further informed the court that he and his co-defendant were stopped by the police, during which time some shots were exchanged between the petitioner and the police officers. *Id.* pp. 9-11.

On June 19, 2006, the date of sentencing, the petitioner moved to withdraw his plea,

claiming that he was misled into pleading guilty on the assumption that the prosecutor's sentencing recommendation called for the maximum sentence to be no greater than fifteen years, as opposed to the minimum sentence. Sent. Tr., p. 9. In response to questions from the trial court, defense counsel acknowledged that the petitioner had pleaded guilty on the date set for trial. Counsel indicated that extensive plea negotiations had taken place that morning. Counsel further informed the court that he had spent two hours that morning explaining the plea and sentencing agreement to the petitioner. Counsel further acknowledged that the prosecutor had met with the petitioner in his counsel's presence that morning to explain the terms of the plea and sentencing agreement to the petitioner. *Id.* at pp. 10-12. The prosecutor on the record acknowledged these discussions. The prosecutor informed the court that he had explained to the petitioner that since he was thirty five years old at the time of the plea, that by accepting the offer of a minimum sentence of no greater than fifteen years, that he would be eligible for parole when he turned fifty. The prosecutor further explained to the petitioner that he had no authority to set the maximum sentence for the crime. *Id.* at p. 12. The prosecutor later indicated that he had spoken with the petitioner's wife and mother and had also explained to them that the plea agreement called for a sentence cap of fifteen years on the minimum sentence. *Id.* at pp. 18-19. Although the petitioner continued to argue that he believed that the plea agreement called for a sentence cap of fifteen years on the maximum sentence, *id.* at pp. 13-19, the trial court refused to allow the petitioner to withdraw his plea of guilty. In so doing, the trial court noted that there had been extensive plea negotiations on the morning of trial and that it had been made "abundantly clear" to the petitioner during those negotiations that the minimum sentence would not exceed fifteen years. *Id.* at p. 20.

3

During the course of sentencing, the prosecutor asked the court to follow the probation department's recommendation that the petitioner be sentenced to fifteen to thirty years in prison, pointing out that the petitioner had placed several police officers' lives in jeopardy, as well as the fact that the petitioner had an extensive prior criminal record. *Id.* at pp. 27-28. After noting that the sentencing guidelines in this case called for a minimum sentence in the range of 126 to 210 months, the court followed the recommendation and sentenced the petitioner to fifteen to thirty years in prison. In imposing sentence, the court mentioned the petitioner's prior criminal record. The court also noted that the facts of the case, as gleaned from the pre-sentence report, indicated that the petitioner had fired shots at the police, which could have lead to someone being killed. *Id.* at p. 29.

The petitioner, through appellate counsel, filed a motion to correct an invalid sentence. The petitioner's counsel alleged that the prosecutor breached the plea and sentencing agreement by asking the court to impose a fifteen year minimum sentence, which was the highest possible sentence that the petitioner could receive under the terms of the sentence agreement. Counsel argued that under the terms of the sentence agreement, the prosecutor should not have made a specific sentencing recommendation at sentencing, and certainly not one that carried the maximum minimum sentence that the petitioner could receive under the terms of the sentencing agreement. Mot. Tr., pp. 5-6. In rejecting the petitioner's argument, the court noted that the plea agreement in this case called for a sentencing cap of no more than fifteen years on the minimum sentence. The terms of this agreement had been placed on the record. The court noted that the petitioner had indicated on the record that he understood the terms of the plea agreement. The court noted that under Michigan law, it is proper for the prosecutor to allocute at sentencing and

ask for any sentence as to the minimum sentence up to and including the amount of the sentence cap. The court concluded that the prosecutor did not breach the terms of the plea agreement by recommending a minimum sentence of fifteen years in this case. *Id.* at pp. 23-26.

At the motion to correct the invalid sentence, counsel also alleged that the petitioner's sentencing guidelines for the crime of conspiracy to commit armed robbery had been incorrectly scored as a crime against persons. The petitioner's counsel argued that the petitioner's sentencing guidelines should have been scored as a crime against public order or public safety, because conspiracy crimes are scored under this crime group for purposes of the sentencing guidelines. However, in response to the trial court's questions, counsel acknowledged that this error would not have effected the sentencing guideline range in this case. *Id.* at p. 15. The trial court later rejected the motion to correct sentence on this basis, noting that any error in this regard was harmless, in light of the fact that the petitioner's sentencing guidelines would have been the same regardless of which crime group that the petitioner's offense was scored under. *Id.* at pp. 28-29.

The petitioner's conviction and sentence were affirmed on appeal. *People v. Witczak,* No. 278752 (Mich. Ct. App. July 27, 2007); *lv. den.* 480 Mich. 958, 741 N.W.2d 344 (2007). The petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

> I. Defendant Witczak is entitled to specific enforcement of the Prosecutor's promise to recommend a maximum-minimum of no more than 15 years where at sentencing the prosecutor expressly adopted the sentencing report recommendation of a 15-year maximum-minimum sentence and a thirty-year maximum term, in violation of defendant's federal and state Due Process Rights at sentencing, US Const, Ams V, XIV.

5

II. The sentence in this case was based on improperly scored legislative sentencing guidelines offense and prior record variables and, accordingly, incorrect information, was violative of the mandates of the guidelines and federal and state constitutional requirements of US Const, Ams V and XIV; Const 1963, art 1, §§ 17, 20.

III. The sentence in this case, was based on inaccurate information and was violative of the mandates of the guidelines and federal and state constitutional requirements of US Const, Ams V and XIV.

IV. Trial counsel was constitutionally ineffective for failing to make the above challenges to variables, in addition to the one he made concerning OV 14 violating defendant's Due Process Rights under US Const, Ams, VI, XIV; Const 1963, art 1, §§ 17, 20.

## STANDARD OF REVIEW

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A federal habeas court may not find a state adjudication to

6

be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

DISCUSSION

I. Claim # 1: The guilty plea claim

In his first claim, the petitioner contends that he is entitled to specific performance of the plea agreement in this case, claiming that the prosecutor breached the plea and sentencing agreement by asking the court to impose the highest minimum sentence possible under the sentence agreement of fifteen years. The petitioner further contends that his plea was involuntary, because he believed that the plea agreement called for the sentencing cap of fifteen years to apply to the maximum, as opposed to the minimum, sentence.

Initially, the Court observes that the petitioner has no absolute right to withdraw his guilty plea. *See Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 748, 655 (E.D. Mich. 2005) (internal citations omitted). Therefore, unless the plea violated a clearly-established constitutional right, whether to allow the withdrawal of a criminal defendant's guilty plea is discretionary with the state trial court. *Id.*

A guilty plea that is entered in state court must be voluntarily and intelligently made. *See Shanks*, 387 F. Supp. 2d at 749; *Doyle v. Scutt*, 347 F. Supp. 2d 474, 482 (E.D. Mich. 2004) (both citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). In order for a plea of guilty to be voluntarily and intelligently made, the defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Correctional Institution*, 927 F. 2d 256, 257 (6th Cir. 1991); *Shanks*, 387 F. Supp. 2d at 749. The

defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty. *King v. Dutton*, 17 F. 3d 151, 154 (6th Cir. 1994). When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F. 2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. The petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.* A federal court will uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty. *Shanks*, 387 F. Supp. 2d at 749. Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his guilty plea, as evidenced by the plea colloquy, is valid. *Id.*

It is only when the consensual character of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984). A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his or her own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (i.e., bribes). *Id.*

An unfulfilled state promise obtained in return for a guilty plea will entitle a habeas petitioner to habeas relief. *Myers v. Straub*, 159 F. Supp. 2d 621, 627 (E.D. Mich. 2001)

(internal citation omitted).  However, a federal court sitting in habeas review should not "lightly find misrepresentation in a plea agreement."  *Id.*

In the present case, the prosecutor clearly stated on the record that he would agree to a sentencing cap of fifteen years on the minimum sentence, not the maximum sentence. Both defense counsel and the petitioner clarified that this was the agreement. Absent extraordinary circumstances, or some other explanation as to why a defendant did not reveal other terms when specifically asked to do so by the trial court, a plea agreement consists of the terms revealed in open court, where the trial court scrupulously follows the required procedure for taking the defendant's plea.  *See Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986); *Hastings v. Yukins*, 194 F. Supp. 2d 659, 669 (E.D. Mich. 2002). Because a plea bargain is contractual in nature, it would violate established contract-law standards to permit a defendant to attempt to prove that a plea agreement is otherwise than it unambiguously appears on a thorough record.  *Baker*, 781 F.2d at 90.  Finally, plea agreements are to be strictly construed.  *See United States v. Brummett*, 786 F. 2d 720, 723 (6th Cir. 1986).

In the present case, the only agreement made by the prosecutor with regard to the sentence was that the petitioner's minimum sentence would not exceed fifteen years.  The prosecutor did not agree to refrain from asking for a specific sentence within that minimum sentencing range.  A "clear reading" of the plea agreement shows that there was no promise by the prosecutor that he would not ask the court to sentence the petitioner to the maximum minimum sentence of fifteen years that was allowable under the sentencing agreement.  The petitioner has therefore failed to show that the original terms of the plea agreement were breached by the prosecutor.  *Myers*, 159 F. Supp. 2d at 628.  Moreover,

9

the petitioner would not be entitled to relief on his claim, where the petitioner expressly denied the existence of other representations or promises at the time of his plea, when queried by the trial court. *Shanks*, 387 F. Supp. 2d at 751; *Hastings*, 194 F. Supp. 2d at 670. Because it is clear from the record that no promises were made that have not been kept, or that the plea bargain was breached, the petitioner is not entitled to habeas corpus relief. *See Williams v. Anderson*, 498 F. Supp. 151, 152 (E.D. Mich. 1980).

This Court will likewise reject the petitioner's related claim that his guilty plea should be set aside, because he mistakenly believed that the sentencing cap of fifteen years would apply to the maximum sentence, not the minimum sentence. In the present case, the trial court advised the petitioner of the maximum penalty for the offense to which he was pleading guilty. The trial court explained to the petitioner the terms of the sentencing agreement, namely, that the prosecutor agreed that the sentencing cap on the minimum sentence would be no greater than fifteen years. The petitioner acknowledged that he understood the terms of the plea agreement and further denied that any additional promises had been made. Under the circumstances, the transcript and colloquy clearly establish that the petitioner's plea of guilty was knowingly and intelligently made. *See Shanks*, 387 F. Supp. 2d at 749. Finally, although the petitioner claims that he understood the sentence agreement to guarantee him a maximum sentence of fifteen years, habeas relief should not be granted by crediting a petitioner's subjective version of his understanding of the plea bargain. *See Nichols v. Perini*, 818 F.2d 554, 558-559 (6th Cir. 1987); *see also See Hastings*, 194 F. Supp. 2d at 670*; Bair v. Phillips*, 106 F. Supp. 2d 934, 940-941 (E.D. Mich. 2000). This Court concludes that the petitioner is not entitled to habeas relief on his first claim.

II. Claims # 2 and # 3: The sentencing claims

The Court will consolidate the petitioner's two sentencing claims together for judicial clarity. In his second claim, the petitioner claims that his sentencing guidelines were incorrectly scored. In his third claim, the petitioner claims that the trial court improperly used the petitioner's assault on the police officers in imposing sentence, because he was never actually convicted of shooting at the police officers.

The petitioner's sentence of fifteen to thirty years was within the statutory limits for the charge of conspiracy to commit armed robbery. A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000).

It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (*quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). The petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003); *see also Adams v. Burt*, 471 F. Supp. 2d 835, 844 (E.D. Mich. 2007). The petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence. *See Shanks*, 387 F. Supp. 2d at 752; *see also Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle*, 347

11

F. Supp. 2d at 485. Any error by the trial court in calculating his guideline score or in departing above his sentencing guidelines range alone would not merit habeas relief. *Id.*

In his third claim, the petitioner contends that the trial court relied on materially false information by considering the petitioner's assault on the police officers in fashioning sentence, because the charges involving the assaults against the officers were dismissed as part of the plea bargain.

In the present case, the petitioner admitted at the plea hearing that he had fired shots at the officers. The pre-sentence investigation report likewise indicated that the petitioner had fired shots at the officers. A sentencing court's consideration of factors other than the crime for which a habeas petitioner is being sentenced, including evidence of crimes for which the petitioner was not tried, does not amount to a constitutional violation. *See Collins v. Buchkoe*, 493 F.2d 343, 345 (6th Cir.1974); *see also McPhail v. Renico*, 412 F. Supp. 2d 647, 653 (E.D. Mich. 2006). Prior to sentencing, a judge may consider past crimes, including those for which a petitioner has been indicted but not convicted, as well as the factual basis of dismissed counts. *See Allen v. Stovall*, 156 F. Supp. 2d 791, 796 (E.D. Mich. 2001). In the present case, the petitioner acknowledged shooting at the officers as part of his attempt to flee the police and the pre-sentence report likewise contained information that the petitioner had assaulted the officers. The trial court's use of this information in fashioning the petitioner's sentence did not violate the petitioner's constitutional rights.

To the extent that the petitioner contends that the trial court judge violated his Sixth Amendment right to a trial by jury by considering the petitioner's assault upon the police in imposing sentence, his claim is without merit.

In *Blakely v. Washington*, 542 U.S. 296 (2004), the U.S. Supreme Court has held that other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 301 (*citing Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

The problem with the petitioner's reliance on *Blakely* is that the case in *Blakely* involved a trial court's departure from Washington's determinate sentencing scheme. Michigan, by contrast, has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan*, 475 Mich. 140, 160-61; 715 N.W. 2d 778 (2006); *People v. Claypool*, 470 Mich. 715, 730, n.14; 684 N.W. 2d 278 (2004) (both citing M.C.L. § 769.8). "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan*, 475 Mich. at 161. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock*, 469 Mich. 247, 255, n.7; 666 N.W. 2d 231 (2003) (citing M.C.L. § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *Claypool*, 470 Mich. at 730, n.14. Michigan's indeterminate sentencing scheme is therefore unaffected by the U.S. Supreme Court's holding in *Blakely*. *Drohan*, 475 Mich. at 164.

The decision in *Blakely* has no application to the petitioner's sentence. Indeterminate sentencing schemes, unlike determinate sentencing schemes, do not infringe on the province of the jury. *See Blakely*, 542 U.S. at 304-05, 308-09. Because

*Apprendi* and *Blakely* do not apply to indeterminate sentencing schemes like the one used in Michigan, the trial court's use of any information regarding the petitioner's assault upon the police officers in fashioning the petitioner's sentence did not violate the petitioner's Sixth Amendment rights. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007); *cert. den.* 128 S. Ct. 1898 (2008); *see also Brown v. Bell*, U.S.C.A. No. 07-2208 (6th Cir. Mar. 7, 2008) (declining to grant a certificate of appealability to habeas petitioner on *Blakely* type claim). The petitioner is not entitled to habeas relief on his second and third claims.

III. Claim # 4: The ineffective assistance of counsel claim

The petitioner lastly claims that he was deprived of the effective assistance of counsel. To prevail on his ineffective assistance of counsel claim, the petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones*, 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

The petitioner first contends that his counsel was ineffective for failing to object to the breach of the plea and sentencing bargain. Because this Court has already determined that the prosecutor did not breach the terms of the plea agreement, counsel did not have any basis upon which to advise the petitioner to withdraw his plea and his failure to advise the petitioner of his right to withdraw his plea of guilty did not constitute ineffective assistance of counsel. *See United States v. Martin*, 45 Fed. Appx. 378, 381-82

14

(6th Cir. 2002).

The petitioner next contends that his counsel was ineffective for failing to object to the scoring of Offense Variables (OV) 1 and 19 under the sentencing guidelines, because he claims that points should not have been assessed under these offense variables, in light of the fact that the petitioner was convicted only of a conspiracy offense. Although the Supreme Court has never expressly extended *Strickland* to noncapital sentencing cases, the Sixth Circuit has applied it in that context. *See United States v. Stevens*, 851 F.2d 140, 145 (6th Cir. 1988). "[A] failure to investigate, participate in, and prepare for the sentencing proceedings fails to satisfy an objective standard of reasonable representation and therefore falls below Sixth Amendment standards for effective assistance of counsel." *Arredondo v. United States*, 178 F. 3d 778, 788 (6th Cir. 1999). To establish a claim of ineffective assistance of counsel in the sentencing context, a defendant must show that:

> 1. counsel's representation fell below the objective standard of reasonableness; and;
> 2. there is a reasonable probability that, but for counsel's unprofessional errors, the result of the sentence would have been different.

*United States v. Harris*, 894 F. Supp. 20, 26 (D.D.C. 1995).

In the present case, the petitioner's appellate counsel acknowledged that the petitioner's sentencing guidelines range would remain the same even if the offense variables had been properly scored. The trial court likewise rejected the petitioner's motion to correct his sentence, finding that any error in the scoring of the guidelines was harmless, in light of the fact that the guidelines range would have remained the same even if they had been correctly scored. In light of the fact that the petitioner's sentencing guidelines range would not have changed even if the offense variables had been properly

15

scored, the petitioner was not prejudiced by counsel's failure to object to the allegedly incorrect scoring of these offense variables under the sentencing guidelines. *See U.S. v. Pomales*, 268 Fed. Appx. 419, 423-24 (6th Cir. 2008).

IV.  A Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, before a petitioner may appeal a decision of this Court, the Court must determine if the petitioner is entitled to a Certificate of Appealability ("COA").  28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  The Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue.  28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)).

In applying the above standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  *Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003).  "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims."  *Id.* at 323.

After conducting the required inquiry, and for the reasons stated in the order above,

the Court finds that the petitioner has not made a substantial showing of the denial of a constitutional right with respect to any of the claims presented. *See* 28 U.S.C. § 2253(c)(2). The petitioner should not receive any encouragement to proceed further. *Slack*, 529 U.S. at 484. Because the Court can discern no good faith basis for an appeal, *see Miller-El*, 537 U.S. at 338, any appeal would be frivolous. The Court will therefore deny a certificate of appealability. *See Long v. Stovall*, 450 F. Supp. 2d 746, 755 (E.D. Mich. 2006). The Court will also deny the petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

## CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus [docket entry #1] is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the petitioner is denied leave to appeal *in forma pauperis.*

**SO ORDERED.**

s/Stephen J. Murphy, III
Stephen J. Murphy, III
United States District Judge

Dated: November 19, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 19, 2008, by electronic and/or ordinary mail.

s/Alissa Greer
Case Manager